ROSMAN & GERMAIN LLP
Daniel L. Germain (Cal. Bar No. 143334)
16311 Ventura Blvd., Suite 1200
Encino, CA 91436-2152
Telephone: (818) 788-0877
Facsimile: (818) 788-0885
E-Mail: Germain@Lalawyer.com

*Counsel for Plaintiff and the Putative Class*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZAK FERRIS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD SECURITIES LLC; ROBINHOOD FINANCIAL LLC; and ROBINHOOD MARKETS, INC.,<br><br>Defendants. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**

Plaintiff Zak Ferris ("Ferris" or "Plaintiff"), on behalf of himself and all other similarly situated (the "Class," as defined below), alleges as follows upon information and belief based, *inter alia*, upon investigation conducted by Plaintiff and his counsel, except as to those allegations pertaining to Plaintiff personally, which are alleged upon knowledge:

## INTRODUCTION

1. This is a class action on behalf of users of Robinhood's trading platform who were prevented from accessing their accounts or trading and continue to suffer from defects in the platform which expose them to continuing exposure.

2. Beginning in March 2020, Robinhod's platform went down at various times, just as the securities markets were experiencing extreme volatility. Users were locked out of their accounts and unable to access their funds or make trades.

3. Plaintiff and the Class were damaged because they were prevented from using their accounts, including making planned trades or exercising options, which would have been very lucrative given the market change during the outages.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate claims of all members of the proposed class exceed $5 million, exclusive of interest and costs, and there are more than 100 class members. Many members of the proposed class are citizens of a state different from Defendants.

5. This Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District where Robinhood is headquartered and where it provided the financial services which are the subject of the present complaint. A substantial part of the acts and omissions that gave rise to this Complaint occurred or emanated from this District.

6. This Court has personal jurisdiction over Robinhood because it is headquartered in and authorized to do business and does conduct business in California, and because it has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state to render the exercise of jurisdiction by this Court permissible.

7. Intradistrict assignment to the San Jose Division is appropriate because substantial part of the events or omissions which give rise to the claims asserted herein occurred in this Division, including that Defendants reside in this Division.

## PARTIES

8. Plaintiff Zak Ferris resides in San Francisco, California and is a user of the Robinhood platform.

9. Defendant Robinhood Markets, Inc. ("Robinhood" or the "Company") is a financial services company headquartered in Menlo Park, California. Robinhood is a trading app and platform that lets investors trade stocks, options, exchange-traded funds and cryptocurrency.

10. Robinhood Financial LLC and Robinhood Securities, LLC are wholly-owned subsidiaries of Robinhood Markets, Inc.

11. Robinhood Markets, Inc., Robinhood Financial LLC, and Robinhood Securities, LLC are collectively referred to as "Defendants".

## STATEMENT TO FACTS

12. Robinhood is a U.S.-based financial services company headquartered in Menlo Park, California. The company offers a mobile app and website that offers people the ability to invest in stocks, ETFs, and options through Robinhood Financial and crypto trading through Robinhood Crypto. Robinhood operates a website and mobile apps for iPhone, Apple Watch, and Android. The company has no storefront offices and operates entirely online.

13. Robinhood is a FINRA[1]-approved broker-dealer, registered with the U.S. Securities and Exchange Commission ("SEC"), and is a member of the Securities Investor Protection Corporation.

14. Per FINRA regulations, Defendants had a duty to develop, design, test, and monitor their services. Defendants had a duty to create and maintain a written business continuity plan identifying procedures relating to an emergency or significant business disruption. Such procedures must be reasonably designed to enable the member to meet its existing obligations to customers during an emergency, such as an outage.

15. Robinhood has 10 million users.

16. Robinhood advertised its platform as the future of trading. Robinhood promoted its online, "technology-driven" brokerage, as state of the art and exceptionally fast. Robinhood touted that trades are executed exceptionally fast, that it had built "low-latency trading systems used by some of the world's largest financial institutions," and that it had brought such expertise to Robinhood. Robinhood said that orders will receive the best possible trade execution. Robinhood further claimed that trades are made in "real time."

17. However, on several occasions in March 2020, Robinhood suffered systemwide, all-day outages, including during the most active trading days in market history. Robinhood users were prevented from logging into their accounts and performing actions on the platform, including making trades and viewing their accounts.

18. Robinhood attributed the outages to "stress on our infrastructure — which struggled with unprecedented load. That in turn led to a 'thundering herd' effect

---

[1] Financial Industry Regulatory Authority ("FINRA") is the largest independent regulator for all securities firms doing business in the United States.

— triggering a failure of our DNS system." After the outages were over, Robinhood sent a letter to its users, which stated:

> When it comes to your money, we know how important it is for you to have answers. The outages you have experienced over the last two days are not acceptable and we want to share an update on the current situation.
>
> Our team has spent the last two days evaluating and addressing this issue. We worked as quickly as possible to restore service, but it took us a while. Too long. We now understand the cause of the outage was stress on our infrastructure—which struggled with unprecedented load. That in turn led to a "thundering herd" effect—triggering a failure of our DNS system.
>
> Multiple factors contributed to the unprecedented load that ultimately led to the outages. The factors included, among others, highly volatile and historic market conditions; record volume; and record account sign-ups.
>
> Our team is continuing to work to improve the resilience of our infrastructure to meet the heightened load we have been experiencing. We're simultaneously working to reduce the interdependencies in our overall infrastructure. We're also investing in additional redundancies in our infrastructure.
>
> After a brief outage this morning, our trading platform was stable for the remainder of the day. As our engineering team works to upgrade our infrastructure, we may experience additional brief outages, but we're now better positioned to more quickly resolve them.
>
> We take our responsibility to you and your money seriously. We recognize that many of you have questions, and we're working to respond to them as quickly as possible.
>
> Many of you depend on Robinhood for your investments, and we're personally committed to doing all we can to operate a stable service that's available when you need it the most.
>
> —Baiju and Vlad, Co-Founders and Co-CEOs

19. The outages could not have happened at a worse time as the Dow Jones Industrial Average enjoyed the single biggest point gain since 2009 while users were locked out of their accounts. The market gained a record $1.1 trillion, all while Robinhood users were unable to participate.

20. Users who attempted to contact Robinhood during the outage were unable to, or Robinhood failed to respond to requests for assistance. Users were left with no recourse during the outage. Users were forced to simply sit and wait for the services to be re-established.

## CLASS ALLEGATIONS

21. Plaintiff brings this action individually and on behalf of a Class, defined as "All customers of Robinhood's trading platform." Excluded from the Class are Defendants, and any of their officers, directors, and employees, and their legal representatives, heirs, successors, or assigns.

22. This action is properly maintainable as a class action because: (1) The Class is so numerous that joinder of all members is impracticable; (2) There are questions of law and fact which are common to the Class including, whether the Defendants violated various laws or were fraudulent or negligent, and whether the Class is entitled to damages, as a result of Defendants' wrongful conduct; (3) Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature; (4) Plaintiff's claims are typical of the claims of other members of the Class and Plaintiff has the same interests as the other members of the Class, such that Plaintiff will fairly and adequately represent the Class; (5) the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members not

parties to the adjudications or substantially impair or impede their ability to protect their interests; and (6) a class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION – FRAUD AND DECEIT

23. Plaintiff hereby incorporates all of the foregoing paragraphs.

24. Defendants' conduct constituted a fraud against Plaintiff and the members of the Class. Defendants, directly or through their agents and employees, made false representations, concealments, and nondisclosures to Plaintiff and the members of the Class about the services, trading capabilities, and access to the Defendants' platform, with the intent to defraud. Defendant intended to defraud Plaintiff and the Class by concealing that the service was subject to outages where users would not be able to access their accounts, or make trades, and the fact that the service would fail or become unavailable on high trading volume.

25. Plaintiff and the Class justifiably relied on the misrepresented facts and were unaware of the concealed and/or suppressed facts and would not have acted as they did if they had known of the true concealed and/or suppressed facts. As a result, Plaintiff and the members of the Class sustained damages.

26. Defendants, directly and indirectly, made substantially similar misrepresentations and material omissions to Plaintiff and each member of the Class.

27. On information and belief, Defendants were aware of the fraudulent nature of the statements and omissions as similar outages had occurred in the past.

28. As a result of Defendants' wrongful conduct, Plaintiff and the members of the Class have suffered and continue to suffer economic losses and other general and specific damages.

29. Defendants' acts were done maliciously, oppressively, and with intent to defraud, and Plaintiff and the Class are entitled to punitive and exemplary damages in an amount to be shown according to proof at the time of trial.

**SECOND CAUSE OF ACTION – VIOLATION OF CLRA**

30. Plaintiff incorporates by reference each and every allegation contained above.

31. The acts and practices of Defendants as described above were intended to deceive Plaintiff and the Class as described herein and have resulted in harm to Plaintiff and the Class.

32. The actions violated and continue to violate the California Consumer Legal Remedies Act (CLRA) in at least the following aspects:

a. In violation of Section 1770(a)(5) of the CLRA, Defendants' acts and practices constitute representations that the services have characteristics, uses or benefits, which they do not.

b. In violation of Section 1770(a)(7) of the CLRA, Defendants' acts and practices constitute representations that the services are of a particular quality, which they are not.

33. By committing the acts alleged above, Defendants have violated the CLRA.

34. Pursuant to California Civil Code § 1780(a) Plaintiff and the Class are entitled to an order enjoining the above-described wrongful acts and practices of Defendants, restitution, an order awarding the payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court under California Civil Code § 1780.

**THIRD CAUSE OF ACTION – DECLARATORY RELIEF**

35. Plaintiff incorporates by reference each and every allegation contained above

36. An actual controversy has arisen and now exists between Plaintiff and the Defendants. As described above, Plaintiff contends that Defendants' conduct violated certain rights and duties.

37. A judicial determination of these issues and of the respective rights and duties of Plaintiff and Defendants is necessary and appropriate at this time under the circumstances, including, but not limited to, a determination of any question of interpretation and validity of the written agreements between the parties and the Defendants attempts to limit liability.

38. Plaintiff seeks a judicial determination of the duties Defendants owe to their users, their duty to operate reliable services, avoid outages, and Defendants' duties during emergencies or when outages may occur.

39. Plaintiff seeks a judicial determination of the rights of Plaintiff and the class under the circumstance alleged herein.

**FOURTH CAUSE OF ACTION – VIOLATION OF UCL**

40. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

41. California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) is designed to protect consumers from unlawful, unfair, or fraudulent business acts or practices, including the use of any deception, fraud, false pretense, misrepresentation, or the concealment, suppression, or omission of any material fact.

42. Defendant has engaged, and continues to engage, in unfair business practices with regard to its services, as alleged herein. Defendants' conduct is not outweighed by any countervailing benefits to consumers.

43. Defendants' conduct is also fraudulent. Defendants represented that

their services were exceptionally fast and that trades were made in real-time, while also concealing the real risk that the service has and would suffer outages that prevent users from making trades and accessing their accounts.

44. Defendants' conduct and the harm it caused, and continues to cause, is not reasonably avoidable by Plaintiff and the Class members. Defendants knew or had reason to know that Plaintiff and the Class members could not have reasonably known or discovered the existence of the service problems and outages before the outages took place.

45. Had Plaintiff and the Class members known that the Defendants' platform suffered outages where users could not access their accounts or make trades, they would not have used the service.

46. Defendant's conduct is also unlawful, and violates FINRA rules requiring them to have emergency plans, to make required disclosures to consumers, and not to make false and misleading advertising, as alleged herein.

47. Defendants' unfair, fraudulent, and unlawful business practices directly and proximately caused damage to Plaintiff and the Class members.

48. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order: (a) requiring Defendants to cease the deceptive and unfair business practices alleged herein; (b) requiring Defendant to restore to Plaintiff and the Class members any money acquired by means of the deceptive and unfair business practices (restitution); and (c) awarding reasonable costs and attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

**FIFTH CAUSE OF ACTION -- NEGLIGENCE**

49. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

50. Defendants knew or should have known of the likelihood of system-wide outages, particularly on days in which trading would high.

51. Defendants had a duty to develop, design, test, and monitor their services. Defendants had a duty to create and maintain a written business continuity plan identifying procedures relating to an emergency or significant business disruption. Such procedures must be reasonably designed to enable the member to meet its existing obligations to customers. Defendants failed to create an adequate plan that satisfied the minimum requirements established by FINRA.

52. Defendants had a duty to, inter alia, prevent outages, and prevent reasonably foreseeable harm that could have resulted from the outages.

53. Defendants breached their duties by failing to create an adequate emergency plan, failing to prevent the outages, failing to notify Plaintiff and the Class of the possibility of the outages, and failing to act on the information and warnings from prior outages.

54. Defendants' individual and collective acts and omissions were actual, substantial causes of Plaintiff's injuries and damages described herein because Plaintiff's injuries would not have happened, but for Defendants' breaches.

55. Defendants' conduct amounted to gross negligence where Defendants breached their duties by failing to create an adequate emergency plan, failing to prevent the outages, failing to notify Plaintiff and the Class of the possibility of the outages, and failing to act on the information and warnings from prior outages while Defendants knew, or should have known, that said failures were likely to harm to users. Defendants' conduct constitutes gross negligence where the outages were a result of large trading volume or for the failure to account for leap year, or both; outages as a result of either incident are extreme departures from the ordinary standard of care.

56. As a direct and proximate result of Defendants' acts and omissions, Plaintiff and the Class sustained damages as set forth herein.

## SIXTH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY

57. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

58. Defendants as brokers owe a fiduciary duty to their investors, including Plaintiff and the Class. Plaintiff and the Class are customers of Defendants and they trusted Defendants to provide the services the Defendants advertised and promised.

59. The fiduciary duty arising from the relationship between Plaintiff and the Class and Defendants was breached by Defendants' failure to provide the services promised, by Defendants' failure to maintain an adequate emergency plan, and by Defendants' failure to properly disclose the risks of outages and the occurrences of past outages.

60. Defendants breached their fiduciary duties directly and proximately caused damage to Plaintiff and the Class members.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, demands a jury trial and prays for judgment as follows:

A. For a declaration of the rights and duties of the parties;

B. For a declaratory judgment that Defendants' actions complained herein are violations of the laws set forth herein;

C. Preliminarily and permanently enjoining Defendants from violating their duties and the rights of Plaintiffs as alleged herein;

D. Declaring this action to be a proper class action and certifying Plaintiff as the Class Representative;

E. Awarding Plaintiff and the other members of the Class compensatory damages against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

F.   Awarding punitive damages and restitution where available;

G.   Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

H.   Awarding Plaintiff and the other members of the Class such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  April 14, 2020          Respectfully submitted,

ROSMAN & GERMAIN LLP
DANIEL L. GERMAIN (Cal. Bar No. 143334)

          */S/ Daniel L. Germain*
DANIEL L. GERMAIN
16311 Ventura Blvd., Suite 1200
Encino, CA 91436-2152
Telephone: (818) 788-0877
Facsimile: (818) 788-0885
E-Mail: Germain@Lalawyer.com

THE WEISER LAW FIRM, P.C.
JAMES M. FICARO
*(pro hac vice to be requested)*
22 Cassatt Avenue
Berwyn, PA 19312
Telephone:  (610) 225-2677
Facsimile:  (610) 408-8062
jmf@weiserlawfirm.com

*Attorneys for Plaintiff and the Putative Class*